GLANCY, BINKOW & GOLDBERG LLP
LIONEL GLANCY
PETER A. BINKOW
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

GARWIN GERSTEIN & FISHER LLP
Bruce E. Gerstein
Scott W. Fisher
Brett Cebulash
1501 Broadway, Suite 1416
New York, NY 10036
Tel: (212) 398-0055
Fax: (212) 764-6620

*Attorneys for Intervenor/Objector Phyllis Landau*

**IN THE UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RALPH SHAFFER, individually and on behalf of all others similarly situated, | CASE NO. CV 06 2235 PSG (PJWx) |
| Plaintiff, | Honorable Philip S. Gutierrez |
| vs. | |
| CONTINENTAL CASUALTY COMPANY, and CNA FINANCIAL CORPORATION dba CNA LTC., | |
| Defendants. | |

**PHYLLIS LANDAU'S OBJECTIONS TO AMENDED
STIPULATION OF SETTLEMENT AND AMENDED [PROPOSED]
FINAL ORDER AND ORDER APPROVING SETTLEMENT**

# **TABLE OF CONTENTS**

**PAGE**

Table of Authorities........................................................... ii

I.   Introduction............................................................. 1

II.   The Court's Role in Approving a Class Action Settlement ............. 1

III.   The Overly Broad Release Was (and Is) Just A Symptom
of an Unfair Settlement................................................ 2

    A.   The Proposed Settlement Class as Structured Is Conflicted and Cannot
Satisfy Requirements of Rule 23(c)(1) and *Amchem*................ 5

    B.   The Proposed Settlement Is Outside the Range of Possible Approval. 7

        1.   The Overwhelming Majority of Class Members Will Receive Nothing of Value Under the Settlement..................... 8

        2.   The Proposed Settlement Incentivezes CNA to Raise Rates... 9

    C.   The Notice Is Misleading and Does Not Satisfy Due Process....... 11

IV.   The Proposed Amended Release Suffers From the Same Flaw
as the Original Release................................................ 12

V.   Conclusion............................................................. 13

i

PHYLLIS LANDAU'S OBJECTIONS TO AMENDED STIP. AND AMENDED PROPOSED ORDER

# TABLE OF AUTHORITIES
## FEDERAL CASES

*Amchem Products, Inc. v. Windsor*,
 521 U.S. 591 (1997) ............................................................... 1, 3, 4, 5, 6, 11

*Detroit Police Officers Association v. Young*,
 920 F. Supp. 755 (E.D. Mich. 1995) .............................................. 3

*In re Equity Funding Corp. Sec. Litigation*,
 438 F. Supp. 1303 (C.D. Cal. 1977) .............................................. 1

*Grunin v. International House of Pancakes*,
 513 F.2d 114 (8th Cir.1975) ........................................................... 1

*Hainey v. Parrott*,
 2007 U.S. Dist. LEXIS 69647 (S.D. Oh. Sept. 20, 2007) ............... 2

*Manchaca v. Chater*,
 927 F. Supp. 962 (E.D. Tex. 1996) ................................................ 3

*Mendoza v. United States*,
 623 F.2d 1338 (9th Cir. 1980) ....................................................... 1

*Rothfarb v. Hambrecht*,
 641 F. Supp. 71 (N.D. Cal. 1986) .................................................. 2

*Staton v. Boeing*,
 327 F.3d 938 (9th Cir. 2003) ...................................................... 4, 8

## STATUTES

Fed.R.Civ.P. 23(c)(1) ............................................................................ 5, 6

## I. Introduction

Following a hearing held on May 5, 2008 to consider whether to grant final approval to a proposed nationwide class action settlement, on May 6, 2008, the Court ordered that the parties "submit a new Proposed Order Granting Final Approval of the Class Action Settlement that addresses the Court's discussion with the parties at the hearing regarding the Release language...." *See* "Order re: Submission of New Proposed Order Granting Final Approval of the Class Action Settlement" ("May 6 Order").  The overly broad release negotiated by Shaffer's counsel about which the Court voiced concerns is just a symptom of the broader problem underlying the entire settlement – conflicted, inadequate representation that was disarmed in the settlement process. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997) (adequacy of representation of the rights of absent class members must be "the dominant concern" of the court in the settlement context). Modifying the release language simply cannot cure this fundamental flaw.

Even if such a modification could cure the problem – and it cannot – the amended release and amended stipulation of settlement proposed by the settling parties do not cure the problems that existed in the original release and the initial stipulation of settlement.

## II. The Court's Role in Approving a Class Action Settlement

The Court must be keenly aware of its role as a "fiduciary (serving) as a guardian of the rights of absent class members." *Mendoza v. United States*, 623 F.2d 1338, 1348 (9th Cir. 1980), *citing Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th Cir.1975)("Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members….The court cannot accept a settlement that the proponents have not shown to be fair, reasonable, and adequate")(citations omitted); *In re Equity*

1

*Funding Corp. Sec. Litigation*, 438 F. Supp. 1303, 1325 (C.D. Cal. 1977)*;
Rothfarb v. Hambrecht*, 641 F. Supp. 71, 73 (N.D. Cal. 1986).  As Mrs. Landau has highlighted in her opening and reply memoranda and declarations in support of her motion to Intervene and Object to the Proposed Settlement and below, acting as a fiduciary for absent class members, the Court cannot approve the proposed amended class action settlement.[1]

### III. The Overly Broad Release Was (and Is) Just A Symptom of an Unfair Settlement

The Court's concerns regarding the broad release agreed to by Shaffer's counsel were certainly well placed.  Indeed, in return for $30,000 for Shaffer and $5 million for his counsel – the only cash provided in the proposed settlement – they were willing to negotiate away class members' claims that had nothing to do with the litigation (e.g. claims relating to benefits under the policy, improper policy administration and renewal) and give CNA free reign to raise premiums in the future with impunity.

Even if the Court could order the parties to modify the release,[2] and the

---

[1] Shaffer's counsel at the settlement hearing tried to characterize Mrs. Landau's and other objectors concerns as "boilerplate" objections typically part of the class action settlement process. Mrs. Landau's counsel in the Illinois action has been part of the class action bar for a combined nine decades.  Objecting to class action settlements is not something they are in the practice of doing.  However, this settlement is so one sided in CNA's favor and egregiously unfair to absent class members that Landau's counsel felt compelled to object here.   Shaffer's counsel also suggests that Landau's counsel is merely interested in attorney's fees. Shaffer's counsel is projecting.  Landau's counsel has never approached CNA or Shaffer's counsel about negotiating a fee to remove their objection.  This settlement does not even come close to a settlement Landau's counsel would enter into or endorse so that they could obtain attorneys fees. The suggestion that Landau's counsel is objecting to obtain fees is offensive, absurd and without any basis in fact.

[2] Mrs. Landau respectfully submits that the proposed settlement cannot be modified by order of the Court as contemplated by the Court's May 6 Order. *Hainey v. Parrott*, 2007 U.S. Dist. LEXIS 69647, *7-8 (S.D. Oh. Sept. 20, 2007) ("The trial court may only accept or reject the

2

settlement proponents provided the Court with a narrower release (which they have not), the settlement could not be approved as fair, reasonable and adequate because the class was inadequately represented. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997) (adequacy of representation of the rights of absent class members must be "the dominant concern" of the court in the settlement context).

The overly generous release that Shaffer's counsel is willing to give CNA is no accident.  Rather, it is the direct result of the conflicted bargaining position that Shaffer and his counsel placed themselves in when trying to negotiate a settlement on behalf of the national class.  CNA told Shaffer's counsel that it was unwilling to settle the California action on a cash basis.  *See* Shaffer's Preliminary Approval Memorandum at 5 [D.E. 355] ("Shaffer Prelim. Approv. Mem.").  Shaffer's counsel was also apparently rebuffed by CNA on its request for a rate freeze.  *See* Jan 14, 2008 Hearing Transcript. at 13 ("Jan 14, 2008 Hr. Tr.").  Rather than press forward with the California case on behalf of the certified California class they actually were appointed to represent to try to get a result that remedied the alleged harm, Shaffer's counsel did the exact opposite – they supinely offered up the rest of the nation's claims to CNA.  By expanding the settlement in this manner, the purported "value" to the class Shaffer and his counsel could tout when requesting fees of $5 million (and $50,000 total in incentive awards) went from well under $1 million (which would be the total relief under the purported settlement for the

---

settlement as agreed to by the parties; the court has no authority to modify the terms of the agreement."); *Detroit Police Officers Ass'n v. Young*, 920 F. Supp. 755, 761 (E.D. Mich. 1995) ("[The] discretion [to determine whether a settlement is fair] does not...permit the court to modify the terms of a negotiated settlement...This court may only approve or disapprove the settlement proposal.") (internal quotations and citations omitted); *Manchaca v. Chater*, 927 F. Supp. 962, 966 (E.D. Tex. 1996) (A court "cannot modify the terms of [a] . . . settlement; rather, . . . [it] must approve or disapprove of [a] . . . settlement as a whole.") (internal quotations and citations omitted).

certified California only class) to a claimed $24-33 million (for the never certified and never represented national class). The Court recognized that this larger valuation of a settlement of the non-cash settlement "makes the 5 million easier to approve."³ *See* January 14, 2008 Hr. Tr. at 14.

Regrettably, the national class' claims that Shaffer and his counsel were so willing to sacrifice for their own benefit were claims that they never possessed, never litigated and have no intention of actually litigating should the Court reject the proposed settlement. As a result, Shaffer and his counsel were disarmed in the negotiation process because they could not seek a better result on behalf of a national class through litigation. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 621 (1997)(concerns of inadequate representation arise where class counsel is "disarmed" due to the inability to use the threat of litigation to press for a better offer). If they wanted to obtain the settlement that could support their fee requests, Shaffer and his counsel would have to accede to CNA's settlement demands, including the overly broad release.⁴ The net result is the settlement proposed by

---

³As discussed below, Mrs. Landau does not believe the proposed settlement really offers $24-33 million in benefits. Moreover, the Court may be under the mistaken belief that it can consider this value as a "common fund" when deciding whether to award attorneys' fees. Under Ninth Circuit law it cannot included as part of a common fund measure because the value of injunctive relief is "so easily manipulable by overreaching lawyers" (such as Shaffer's counsel here). *Staton v. Boeing*, 327 F.3d 938, 974 (9th Cir. 2003). A common fund is created when "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf," whereas it is not created when "litigants simply vindicate a general social grievance." *Id.* The only common fund created by the settlement that arguably meets these criteria is the $5 million in attorneys fees. However, it would be unprecedented to award Shaffer's counsel 100% of the common fund.

⁴Shaffer's counsel asserts that it had leverage in negotiations because it "clearly indicated to defendants an intent to prosecute these cases nationwide. We have already filed an action in Louisiana and an action here." May 5, 2008 Hr. Tr. at 42. But those actions – the only other actions brought by Shaffer's counsel against CNA in the almost six years since CNA began

4

Shaffer and his counsel which does not remedy the harm about which they complained when they brought their action – premiums in excess of what CNA promised. Policyholders will not be getting any consideration at all for premiums paid in excess of the amount CNA originally represented – no cash back, no roll back on premiums to the original rate, nor even a moratorium on future rate increases. Class members will be getting absolutely nothing for those claims. Rather, under the proposed settlement, class members will acknowledge and bless CNA's right to impose past rate increases and worse, acknowledge and bless CNA's rights to impose additional rate increases in the future and release any claims for such rate increases.

As demonstrated below, there are additional serious flaws in the settlement that flow directly from the inadequate, conflicted representation and preclude approval of the amended proposed settlement.

### A. The Proposed Settlement Class as Structured Is Conflicted and Cannot Satisfy Requirements of Rule 23(c)(1) and *Amchem*.

Because there are distinct groups of policyholders – those who have suffered rate increases and those who have not, the proposed nationwide class fails to meet the requirements under Rule 23(c)(1) and *Amchem*. Each group is entitled

---

increasing rates on its policyholders – were brought on behalf of residents of California (2,000 policyholder class members) and Louisiana (369 policyholder class members) only (or less than 3% of the purported 96,000 nationwide class members), not as national class actions. If he had intended to pursue other litigation against CNA in other states, why had he not already brought those actions, like he had in California and Louisiana? Similarly, his assertion that he could later amend his California only class action to become a national class is just a post-hoc rationalization. The fact is, despite claiming to be on the eve of trial, Shaffer's counsel never amended the complaint to include national claims and has indicated that the complaint filed as part of the settlement package against CNA that asserts national claims will be dismissed if the settlement does not get approved. *See* Phyllis Landau's Memorandum in Support of Her Motion to Intervene and Objection to the Proposed Settlement of this Action at 8 n. 9 ("Landau Opening Mem.").

5

to separate representation by counsel and class representatives that will protect its interests with undivided loyalty.  Yet, because it was in CNA's interest to cast a net as broad as possible in order to get free releases from as many policyholders as possible and in Shaffer's counsel's interest to have as big a class as possible to increase the purported settlement "value" to support the attorneys fee request, Shaffer's counsel was willing to create one overbroad and amorphous class, without regard for this intra-class conflict.  *See* Landau Opening Mem. at 2.[5]

      Remarkably, Shaffer's counsel acknowledges the conflict when trying to rationalize why this single class was created claiming that if the settlement did not include both groups "policyholders in some states would unfairly subsidize others".  *See* Shaffer's Brief in Opposition to Landau's Motion to Intervene [D.E. 462] at 18.  In essence, Shaffer's Counsel is advocating that CNA raise premiums for class members who have yet to suffer a premium increase (and thus yet to suffered an injury) for the benefit of class members who already have suffered a rate increase (class members who have already suffered an injury).  Because of the inherent conflict that such settlement classes create, the Supreme Court in *Amchem* determined that there was a heightened duty by a district court to protect absentee class members from overbroad class definitions, when confronted, as here with a settlement only class certification.  *Amchem*, 521 U.S. at 620 ("But other specifications of the rule – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened,

---

[5]Shaffer did not seek to represent this type of broad class when seeking class certification in California.  *See* January 26, 2007 Class Certification Order [D.E. 78] at 4 (noting that all class members received notice of premium increase).  The fact that the Court certified this class of California policyholders who suffered rate increases and appointed Shaffer and his counsel as class representatives does not give them carte-blanche to settle a case on behalf of all policyholders across the nation without regard for (a) whether such policyholders suffered rate increases or not and (b) the requirements of Fed.R.Civ.P. 23(c)(1) and *Amchem*.

6

PHYLLIS LANDAU'S OBJECTIONS TO AMENDED STIP. AND AMENDED PROPOSED ORDER

attention in the settlement context.  Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.").

As the Supreme Court determined, the class was inadequately represented because it included two distinct groups that did not suffer the same harm and did not possess the same interests – persons who manifested injury from exposure to asbestos and person who were only exposed to asbestos.  The same is true here.  Those who have not gotten rate increases have an interest in keeping it that way.  The threat of future litigation is perhaps the best way to obtain that goal – it is certainly a better way than assuring CNA that lawsuits for such increase can never be brought by this group of policyholders.  Yet, under the settlement, that is precisely what is happening (because Shaffer's counsel has deemed it more fair to a different group of policyholders – those who have already suffered a rate increase).  Similarly, those who have suffered a rate increase are interested in maximizing the value of their recovery.  But to the extent that there is any real "value" available that can be delivered in this settlement (which there really is not), it is being unfairly diluted by including policyholders who have not suffered increased premiums within the class.  *Id.* at 625-28.

### B. The Proposed Settlement Is Outside the Range of Possible Approval

The proposed settlement is outside the range of possible approval since it provides no significant recovery to the overwhelming majority of class members, is clearly inadequate, does not remedy the wrongdoing and the harm alleged, and provides no common fund (except for the attorneys fees agreement between CNA and Shaffer's counsel).  Potential damages could exceed $1 billion.  *See* Landau Opening Mem. at 6 n. 4.  Shaffer's counsel estimates that the value of the settlement will be "between $24 and $33 million" (all of which is injunctive type,

7

non-cash relief except for attorneys' fees).  *See* Shaffer Prelim. Approv. Mem. at 19-20.  These "benefits" **are only speculative, potential "benefits" delivered to class members**.  As the Ninth Circuit has warned "[p]recisely because the value of injunctive relief is difficult to quantify, its value is also easily manipulable by overreaching lawyers seeking to increase the value assigned to a common fund." *Staton v. Boeing*, 327 F.3d 938, 974 (9th Cir. 2003).  The only tangible, non-speculative value delivered is to CNA, Shaffer and Shaffer's counsel.

### 1. The Overwhelming Majority of Class Members Will Receive Nothing of Value Under the Settlement

As Shaffer's counsel admits, the purported "benefit" to the overwhelming majority of the class in return for their release of all future claims against CNA relating to their policy (except for "denial of benefits") may come "<u>if ever</u>"[6] at some untold time in the future through the "enhanced contingent nonforfeiture benefit" ("ECNFB") when CNA raises its premiums above a certain amount (that under the settlement class members will be conceding CNA has the right to do) and the payment of the newly raised premiums become unbearably high.  At that point, a class member can "choose" to stop paying premiums and receive "coverage" in the amount of 110% of the premiums he paid in for the policy. As recently noted in AARP's 2008 Policy Book "**because it provides only limited benefits – often no more than three months of nursing home care – nonforfeiture is a *last resort for consumers* who no longer can afford their premiums because of rate increases or life changes.**"  The Policy Book: AARP Public Policies 2008, Long Term Services and Support 7-88 (emphasis added). Three months of "coverage" does not even closely resemble the long term care

---

[6]*See* Shaffer's counsel's April 28, 2008 Valuation brief [D.E. 544] at 6 (emphasis in original) ("April 28 Valuation Brief").

8

PHYLLIS LANDAU'S OBJECTIONS TO AMENDED STIP. AND AMENDED PROPOSED ORDER

coverage that policyholders purchased from CNA under the policy, and describing this "benefit" as "coverage" is misleading and dangerous.  See Landau Reply Memorandum [D.E. 532] at 9 n.6.

While Shaffer's counsel contends that 86,117 policyholders will be eligible for this type of benefit should CNA raise rates high enough, it anticipates that 10% of the class members (who are still alive at the future triggering rate increase) will ever make use of it.  **By Shaffer's counsel's own estimate**, **90% of class members will *never receive any* benefits under the settlement**.  *See* April 28, 2008 Valuation Brief at 6.  This fact alone demonstrates that the settlement cannot be approved.

### 2. The Proposed Settlement Incentivizes CNA to Raise Rates

Shaffer's counsel also falsely contends that the proposed settlement provides a deterrent effect on CNA and asserts that it "must be considered and given a monetary value even though it is difficult to value in the conventional sense."  April 28, 2008 Valuation Bf. At 5.  Shaffer's counsel then contends that "if every policyholder were to exercise the 110% ECNFB option and rates ultimately increase beyond the threshold at which it would apply to these policyholders, the benefit would be valued at over $900 million" (which is 110% of all of the premiums that class members have paid in).  Shaffer's counsel then "assumes" that there is a 50% chance of a rate increase without the ECNFB and a 25% chance of a rate increase with the ECNFB provided in the settlement.  However, there is neither logic nor fact to support this completely arbitrary and self serving assumption that the ECNFB is more likely to cause CNA not to raise rates.  In fact, CNA is actually much more likely, both logically and factually, to raise rates under the proposed settlement because (1) it would be able to do so with the express imprimatur of this Court and all class members and without any

9

threat of litigation (2) statistically, as Shaffer's counsel acknowledges, the overwhelming majority want the coverage and will continue to pay, notwithstanding the increased rate[7] and (3) for those who cannot continue to pay, and take the ECNFB, CNA will have successfully capped their payout at to at most 110% of the premiums paid in by such policyholders.

If anything, CNA is incentivized to raise rates as sharply as possible to obtain additional premiums and induce lapses that will cap their long-term care liability on as many policies as possible. The alternative for CNA to inducing those lapses at the ECNFB rate is to pay out claims to policyholders that last on average two and a half years according to CNA – ten times as costly as the 3 months that the ECNFB "coverage" will cost CNA.

It is a win-win for CNA (as noted above) and Shaffer's counsel (since neither counsel's fees nor expenses are at risk through the proposed settlement, as they would be at trial) and a lose-lose for the class (who have no way to challenge CNA and no way to stop CNA's rate increases).[8]

---

[7] See Shaffer's Prelim. App. Mem. at 5.

[8] Indeed, the settlement is harmful to class members. Unlike typical consumer protection cases where a consumer's relationship begins and ends with the purchase of a product from the defendant, here class members have an ongoing relationship with CNA because they must continue to pay premiums if they want long term care coverage. If the settlement is approved, CNA can use the settlement to its advantage to raise rates on policyholders who may never have experienced rate increases or to raise rates in excess of what they otherwise would have been able to obtain. Specifically, CNA can go to those insurance departments that have thus far refused to allow CNA to raise premiums or would only allow a slight increase and say that the policyholders in those states, as well as the Federal Court in California, have determined that the requested rate increases are appropriate. Thus, not only does this coupon settlement provide no relief from the harm alleged premium rate increase, it actually creates additional harm and cannot be approved by a Court that properly discharges its fiduciary duty to protect absent class members.

10

PHYLLIS LANDAU'S OBJECTIONS TO AMENDED STIP. AND AMENDED PROPOSED ORDER

### C. The Notice Is Misleading and Does Not Satisfy Due Process

As demonstrated more fully in Mrs. Landau's opening and reply briefs, the notice fails to adequately describe which claims are being released and who is even eligible as a class members.[9] Indeed, it is no wonder that the notice is so vague and inaccurate since Shaffer's counsel cannot even accurately determine who is in the class. For instance, as reflected in the amended stipulation of settlement, it is quite clear that the class definition itself depends in the occurrence of certain future events. See May 19, 2008 Amended Stipulation of Settlement [D.E. 557-2] at ¶2 (amending class definition). If Shaffer's counsel had to amend the class definition after the fact to reflect that class membership will depend on the occurrence or non-occurrence of future events at the time of the "Effective Date" of the settlement as opposed to at the time the settlement was entered into (as was the case in the original Stipulation of Settlement), the notice that is supposed to be designed to inform class members of their rights and obligations, is clearly defective.

For the foregoing reasons and those stated in Mrs. Landau's Memoranda and declarations in Support of Her Motion to Intervene and Objection to the Proposed Settlement of this Action, which are incorporated herein by reference, the Proposed Amended Stipulation of Settlement must be rejected.

---

[9] Even if the notice were proper (which it is not) it cannot substitute for meeting all of the requirement under Rule 23. As the Supreme Court in *Amchem* indicated, inadequate representation could not be cured, as class counsel seems to suggest here, by notice and the opportunity to opt out of the class. *Id.* at 628. Here, as in *Amchem*, the Court must reject this settlement.

11

PHYLLIS LANDAU'S OBJECTIONS TO AMENDED STIP. AND AMENDED PROPOSED ORDER

## IV. The Proposed Amended Release Suffers From the Same Flaws as the Original Release

As discussed above, amending the release cannot cure this defective settlement. But the amended release only further demonstrates that Shaffer's counsel is not adequately representing the class. Shaffer's counsel stood before this Court and said that "non-marketing issues such as claims administration are specifically and expressly reserved under the document", that the intent of the release he believed he negotiated did not release such claims and that he would clarify this. *See* May 5, 2008 Hearing Transcript at 7-8. But the amended release that was submitted to the Court (without any explanatory memorandum to assist the Court or absent class members) again releases these very claims. Apparently, CNA still wants these claims to be released, and notwithstanding his representations to the Court, Shaffer's counsel is still willing to comply.

In addition, the modified release fails for the reasons already set forth in set forth in Mrs. Landau's Memoranda and declarations in Support of Her Motion to Intervene and Objection to the Proposed Settlement of this Action and in the Memoranda of Rosette Kulkin and Robert Johnson objecting to the Amended Stipulation of Settlement and Amended Proposed Order Approving Settlement [D.E. 558], [D.E. 559], in which Mrs. Landau joins.

## V. Conclusion

Based on the foregoing and the other submissions objecting to the proposed settlement, objector and intervenor Phyllis Landau respectfully requests that the Court grant Mrs. Landau's request for intervention and deny approval of the proposed settlement.

Dated: May 29, 2008

GARWIN GERSTEIN & FISHER LLP

By: s/Scott W. Fisher
SCOTT W. FISHER
BRUCE E. GERSTEIN
BRETT CEBULASH
1501 Broadway, Suite 1416
New York, NY 10036
Tel: (212) 398-0055
Fax: (212) 764-6620

Of Counsel:

**GLANCY, BINKOW & GOLDBERG LLP**
LIONEL GLANCY
PETER A. BINKOW
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**FUTTERMAN HOWARD WATKINS WYLIE & ASHLEY, CHTD.**
Ronald L. Futterman
William W. Thomas
122 S. Michigan Avenue, Suite 1850
Chicago, IL 60603
Tel: (312) 427-3600

**BERGER & MONTAGUE, P.C.**
Daniel Berger
Shanon Carson
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3026
Fax: (215) 875-4671

13

PHYLLIS LANDAU'S OBJECTIONS TO AMENDED STIP. AND AMENDED PROPOSED ORDER

# CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2008, I electronically filed the foregoing Phyllis Landau's Objections to Amended Stipulation of Settlement and Amended [Proposed] Final Order and Order Approving Settlement, using the CM/ECF system, which sent notification of such filing to the following:

| Name | Email |
| --- | --- |
| Richard J Arsenault | rarsenault@nbalawfirm.com |
| Brent R Austin | austin@wildmanharrold.com |
| Peter A Binkow | pbinkow@glancylaw.com |
| Allan Kanner | a.kanner@kanner-law.com |
| Stan Karas | stankaras@quinnemanuel.com, westonreid@quinnemanuel.com, gayleduran@quinnemanuel.com |
| Sylvie K Kern | sylviesadventure@yahoo.com |
| Wayne S Kreger | wkreger@maklawyers.com |
| Aylin R Acikalin Maklansky | a.maklansky@kanner-law.com |
| Michael L McCluggage | mccluggage@wildman.com |
| Thomas Meites | tmeites@mmmglaw.com |
| Shon Morgan | shonmorgan@quinnemanuel.com |
| Lisa S Simmons | simmons@wildman.com |
| R John Street | street@wildmanharrold.com |
| Christopher Tayback | christayback@quinnemanuel.com |
| Gillian L Wade | gwade@maklawyers.com |
| Conlee Schell Whiteley | c.whiteley@kanner-law.com |

                                              s/ Scott W. Fisher
                                                Scott W. Fisher